**FILED & ENTERED**

**JUN 23 2014**

**CLERK U.S. BANKRUPTCY COURT**
**Central District of California**
**BY penning  DEPUTY CLERK**

# UNITED STATES BANKRUPTCY COURT

# CENTRAL DISTRICT OF CALIFORNIA

# LOS ANGELES DIVISION

| | |
|---|---|
| In re: | CHAPTER 7 |
| Alen L. Ly | Case No.:  2:12-bk-25257-TD<br>Adv. No.:  2:12-ap-01970-TD |
| Debtor. | **MEMORANDUM DECISION** |
| Michelle V. Che | Date:   May 27, 2014<br>Time:   9:00 a.m.<br>Courtroom:   1345 |
| Plaintiff, | |
| v. | |
| Alen L. Ly | |
| Defendant. | |

Trial on the second amended complaint filed February 6, 2013 by Michelle Che (Che) against Alen Ly was held on May 27, 2014.  The trial was conducted by written declarations and live cross examination of witnesses pursuant to a Trial Setting Order entered November 15, 2013, an Amended Pretrial Stipulation, and an Order Approving Amended Pretrial Stipulation entered March 18, 2014, as well as supplemental orders.

-1-

Che pursued causes of action seeking nondischargeability pursuant to 11 U.S.C. §§ 523(a)(2) and (a)(6).  The testimony presented was brief.  Only a few witnesses were cross examined:  Bunnary Sophea, Alen Ly and Vanessa Ly were cross examined by Plaintiff, who then rested her case.  Defendant called Che for cross examination, followed by rebuttal examination by Plaintiff.  Defendant called Alen Ly for rebuttal examination, then rested his case.  Plaintiff called Che for further rebuttal.  Closing arguments followed and the matter was taken under advisement based on the testimony, documentary evidence and trial briefs.

Che's legal theories were (1) that Alen Ly had defrauded her by forging Che's signature on a grant deed purportedly from Che to Alen Ly, and (2) that Alen Ly's conduct was wilful and malicious and had caused Che's to suffer from Alen Ly's intentional infliction of emotional distress.

Most of the live testimony was frank, straightforward and credible.  Che testified in Cambodian with the assistance of an interpreter.  In some instances, Che's live testimony was unusually emotional, nervous and frenetic, especially on cross examination — guarded, defensive, inappropriately hesitant, and inconsistent.  When Che was under cross examination on critical points, Che was not a credible witness.

One of Che's causes of action was based upon 11 U.S.C. § 523(a)(2), without specifying either § 523(a)(2)(A) or § 523(a)(2)(B).  Under § 523(a)(2)(A), nondischargeablity may be sought for any debt for money, property, services, or an extension, renewal, or refinancing of credit, to the extent obtained by false pretenses, a false representation, or actual fraud, other than a statement respecting the debtor's or an insider's financial condition.  Five elements must be proved to enable a creditor to prevail on a claim under § 523(a)(2)(A):  (1) a misrepresentation of fact, fraudulent

omission or deceptive conduct by the debtor; (2) the debtor's knowledge of the falsity or deceptiveness of the statement or conduct; (3) the debtor's intent to deceive; (4) justifiable reliance by the creditor on the debtor's statement or conduct; and (5) damage to the creditor proximately cause by its reliance on the debtor's statement or conduct. *American Express Travel Related Servs. Co. v. Hashemi* (*In re Hashemi*), 104 F.3d 1122, 1125 (9th Cir. 1996); *Citibank (South Dakota), N.A. v. Eashai* (*In re Eashai*), 87 F.3d 1082, 1086 (9th Cir. 1996). Here, Che acknowledged that she had talked to Alen Ly only once, in early 2006 after Vanessa Ly bought a pharmacy from Che. Alen Ly accompanied Che to her bank to help Che sign over her pharmacy bank accounts to Vanessa Ly, Alen's sister. There was no evidence of any other conversation between Alen Ly and Che. There was no evidence that Alen Ly took any action that was an intentional effort on his part to deceive or injure Che or her financial interests.

Under § 523(a)(2)(B), the creditor must prove that the debtor used a statement in writing that is materially false, respecting a debtor's or insider's financial condition, on which the creditor reasonably relied in furnishing money, property, services, or credit to the debtor. The trial evidence failed to prove any materially false writing by Alen Ly on which Che relied that caused her to furnish anything of value to Alen Ly.

Pursuant to § 523(a)(6), a debt is nondischargeable when incurred by a debtor when such debt is "for willful and malicious injury by the debtor to another entity or to the property of another entity . . . ." In order for the debt to be nondischargeable under § 523(a)(6), the bankruptcy court must find an injury inflicted by debtor that was both willful and malicious. *Matter of Ornsby*, 591 F.3d 1199, 1206 (9th Cir. 2010). "The Supreme Court in *Kawaauhau v. Geiger* (*In re Geiger*), 523 U.S. 57, 118 S.Ct. 974, 140 L.Ed.2d 90 (1998), made it clear that for section 523(a)(6) to apply, the actor must

1 intend the consequences of the act, not simply the act itself." *Ornsby* at 1206, *citing*
2 *Geiger* at 60.
3   The testimony, written and oral, about the witnesses' relationships and business
4 transactions was conflicting on almost all material issues.  The documentary evidence
5 was limited.  Che's only evidence of fraud or willful and malicious injury was a 2011
6 superior court default judgment entered against Alen Ly.  Ex. 6.  Che was awarded *no*
7 damages.  The judgment recited that a 2006 grant deed from Che to Alen Ly was a
8 forgery.  The judgment ordered a transfer of the Myrtle home to Che and enjoined Alen
9 Ly from approaching within 100 feet of the home.
10   Here, Che claimed damages of either $150,000 or $300,000 pursuant to §§
11 523(a)(2)(A) and (a)(6), but Che failed to prove by a preponderance of the evidence, or
12 at all, how Alen Ly caused Che any loss, monetarily or otherwise, as a result of any
13 conduct or representation by or chargeable against Alen Ly.  Che failed to prove any
14 financial details of her Myrtle home ownership necessary to establish that she suffered
15 any financial loss for which Alen Ly should be held responsible.  Che produced no
16 evidence regarding what became of her $495,000 mortgage debt secured by the Myrtle
17 home.  Such debt appears to have been discharged in a 2006 completed escrow
18 between Che and Alen Ly.  See Exs. A, B, C, and 4.
19   The trial evidence established a March 2006 written agreement signed by Che to
20 sell Myrtle to Alen Ly.  The agreement was expressed by Che's valid written signature
21 on amended escrow instructions, written evidence of a sale agreement.  Ex. A.  These
22 instructions provided for the payoff of Che's earlier 2006 $495,000 mortgage secured by
23 Myrtle.  Alen Ly obtained a $393,750 new first mortgage loan secured by Myrtle that
24 was recorded in July 2006.  Ex. 4.  Che's evidence was insufficient to refute Alen Ly's

persuasive and credible testimony that his second mortgage secured by Myrtle, recorded in December 2006 to secure a $250,000 line of credit, was arranged to document a line of credit agreement that Alen Ly negotiated with another bank but never drew upon.

In the end, the court infers from the conflicting, scant evidence that in 2006, Alen Ly, with Che's written agreement, paid off Che's mortgages on Myrtle, replaced Che's mortgages on the Myrtle home with two mortgages Alen Ly arranged with his own banks, one in the amount of $373,750 to close the 2006 escrow, and a later second mortgage to secure a line of credit agreement for $250,000 that Alen Ly never drew upon.

Che has failed to prove that she suffered consequential damages in any amount proximately caused by Alen Ly. Che has provided no credible or convincing evidence, and really no evidence at all, that Alen Ly made any false representation to Che. Che failed to prove any justifiable reliance on her part based on wrongful conduct by Alen Ly. In the end, Che's trial evidence proved only that somehow, an early 2006 grant deed to the Myrtle property was forged by somebody, not necessarily by Alen Ly or chargeable against Alen Ly.

Che's evidence with respect to her claim of intentional infliction of emotional distress fails as well. The Che evidence is superficial at best and insufficient to support Che's claims. In essence, Che's evidence proved no more than that she was really upset by what happened with respect to her Myrtle property in 2006. The court finds that Che's evidence in this regard is insufficient and unpersuasive of any liability on Alen Ly's part under §523(a)(6).

In the court's view, there were many red herrings in Che's pleadings and

evidence, primarily focused on three people: Alen Ly's sister Vanessa Ly, Bunnary Sophea, and maybe, Vanessa's mother-in-law.  No third party testimony or testimony about third parties commenting on their conclusion that Alen Ly was the forger was anything other than unconvincing, unpersuasive hearsay.  No third party evidence persuades the court that the forgery should be attributed to Alen Ly.  Che's evidence does not support Che's claims of wrongdoing by Alen Ly.

     Che's case comes down to her 2011 superior court judgment that a 2006 recorded grant deed to Myrtle in favor of Alen Ly was a forgery.  Even here, neither the superior court judgment nor the trial evidence establishes that Alen Ly was the forger or in any fashion was implicated directly or indirectly in the forgery.  Neither the superior court judgment nor the trial evidence here proves by a preponderance, or at all, that Alen Ly fraudulently transferred Che's Myrtle property to himself.  The judgment assesses no damages against Alen Ly, though obviously, Alen Ly was the beneficiary of the 2006 grant deed.

     Che acknowledged that she signed escrow instructions in March 2006 confirming and documenting her agreement to sell the Myrtle property to Alen Ly.  Though she said she was not aware of signing such an agreement, her claim in this regard was not credible, given her acknowledged experience with buying and selling businesses and real property with a lawyer's help.  The court is left to speculate as to how this Alen Ly/Che written agreement came about and by whom or why the 2006 grant deed may have been signed with a signature imitating Che's signature.  Nothing in this conflicting record is sufficient to support a judgment denying dischargeability to Alen Ly under any legal theory urged by Che.

     Finally, Che asserted the principles of claim preclusion and issue preclusion to

support her claims here.  The court has considered those claims as Che expressed them in her pleadings and closing statements by her counsel.  The court finds Che's preclusion principles unpersuasive here.  The evidence that Che produced to support her claim in this regard was too diffuse and unpersuasive.  The judgment entered in 2011 by the superior court was a default judgment.  It contains no specific findings against Alen Ly but rather rests on the abstract finding that the deed was forged.  See Ex. 6.  The judgment does not provide an adequate basis to support issue or claim preclusion regarding fraud or willful and malicious injury against Alen Ly on any basis other than speculation.  That is an inadequate basis to support either claim.

Che's evidence does not explain her motivation in the transactions discussed.  It does not adequately explain the financial details of Che's ownership or interest in the Myrtle property.  It does not establish any damages Che suffered, what any of her dealings with Alen Ly cost her out of pocket, or for that matter, where Che emerged financially in relation to the Myrtle property based on any wrongdoing Che alleged against Alen Ly.

Judgment will be entered in favor of Alen Ly by dismissing Che's claims against him.

Date: June 23, 2014

Thomas B. Donovan
United States Bankruptcy Judge